In our final case of the day, the government v. Kenneth Wayne Hart. Mr. Burnham, good to have you with us, Mr. Burnham. May it please the court, Charles Burnham on behalf of the appellant, Kenneth Wayne Hart. Your honors, there are two issues, or really one issue and one collection of issues before the court today. The first is, did the district court err by denying the defendant's motion to dismiss for violation of the Speedy Trial Act? And the second is, did a collection of weak intent, erroneous evidentiary rulings involving a witness deprive Mr. Hart of a fair trial? And I'll address them in that order. Before going to the specific facts of the speedy trial violation that we contend occurred here, I think it's useful very briefly to review sort of what I'll call the underlying philosophy of the Speedy Trial Act that makes all of our arguments, I hope in this case, make sense. And what I mean by that is unlike many criminal statutes, the Speedy Trial Act is not concerned simply with the rights of the defendant and the government. But the Speedy Trial Act rather, explicitly according to the Supreme Court's interpretations of it, takes into account the interests of the public, of the country, in ensuring a fast and efficient judicial system. Which is why the Supreme Court, and indeed this court over the years, has been quite strict in interpreting the act in terms of not allowing waiver, estoppel, and so on. And that explains... Is that a little bit different than the Sixth Amendment Speedy Trial Right? Is it protecting anybody other than the defendant? The Speedy Trial... Your definition of the Speedy Trial Act, and I'll get to you, you put it exactly right, as I understood it. It's for the defendant, the government, and the public. But what about the Sixth Amendment Speedy Trial Right? Is that primarily or solely to protect the defendant's rights? Yes, Your Honor. I mean, the other rights in the Sixth Amendment seem to be directed for the defendant. But the Speedy Trial Act also is to implement the Sixth Amendment right. Yes, Your Honor. That's another part of it, right? I agree, Your Honor. When was it adopted? 1970s. I think that sounds right, Your Honor. I remember it, but I don't remember what year. I remember when it came in. I don't remember it. A couple years before I was born. Can I ask you about... You mentioned estoppel. And in your brief, you argued that, as you just did, that this court doesn't allow a waiver and estoppel. But the Supreme Court in Zedner and our decision in Velazquez and our decision in Keith all recognize, it seems to me, that waiver and estoppel are different arguments. Because Zedner itself, right, the Supreme Court rejects the prospective waiver argument, but then addresses on the merits the estoppel argument and says that's a separate argument. And so can you first respond to that? Do you agree that waiver and estoppel are different and that Zedner sets out as three-part tests that we've applied in Velazquez, irrespective of a waiver, to determine whether judicial estoppel applies? I agree with that, Your Honor. They're separate but related is the way I would put it. Right, but the difference being is that waiver doesn't solve the public's interest, but estoppel might not address the public's interest, but it prohibits your client in an instance where they seek a continuance to then show up in court and make a legally inconsistent argument, right? That's what Zedner and Velazquez tell us. That's correct, Your Honor. And so what I'm trying to get at, your argument in the briefs was, no, because that's inconsistent with Zedner. Can you help me understand why you think on the principles that Zedner lays out that estoppel doesn't apply here? Right, your position seems to be plainly inconsistent, right? The defendant, I don't mean you, obviously you get the credit and blame for your client, but you asked for a continuance in order to engage in plea negotiations, right? And then you succeeded in getting the district court to do that, right? That's the first two factors. And then there's did the defendant get something as a result, right? You got 30 days to do plea negotiations that you wouldn't have otherwise gotten. And that's the third part of Zedner. So understanding your bloat argument, and hypothetically, let's say we agree with that, what I'm having trouble with is understanding how judicial estoppel doesn't apply here to bar your claim. Because judicial estoppel, Your Honor, can't relieve the district judge, or the magistrate judge in this case, of the duty, the absolute duty, to where there's not an automatic exclusion, consider the factors, and make the proper findings for an ends of justice continuance. That cannot be waived. I think that Zedner tells us that it can do exactly that. That's exactly what Zedner and Velazquez tell us, right? That it can do exactly that, right? That you said plea negotiations are excluded. Turns out that might have been wrong, right? But the district court relied on that position presented by both parties. It granted it on that basis. And you can't now show up and say plea negotiations are excluded, right? You might be right, right? That's a different question. But judicial estoppel says you can't get both bites. You don't get to tell the district court plea negotiations are excluded, and tell us that plea negotiations are not excluded. Well, in this case, the defendant never specifically said at the time. Counsel did, though. But hypothetically, accept that counsel is the same as defendant for this argument. I understand you have a different version of that. But help me understand. Well, I respectfully disagree, Your Honor, because the initial filing seeking the first continuance did not specifically say plea negotiations are automatically excluded. The filing was very simple, and it just said we need time to do plea negotiations. So it didn't take a legal position that was inconsistent with the position I'm arguing now to court. I mean, that's cutting it pretty thin, right? We have binding Fourth Circuit precedent that says that plea negotiations are specifically excluded. They're asking for a continuance. The court does just that. I mean, that's cutting it pretty thin to say that you've got to cite the case from the Fourth Circuit when it's established law in this circuit that they are excluded. Well, I wouldn't necessarily say that the case from the Fourth Circuit has to be cited, but there has to be some indication that the defendant is taking the position that an automatic exclusion applies, which is not what either party took in this case. In fact, the government, a little bit later in the case, explicitly took the position that the ends of justice findings would have been required. Of course, that was later. This is on page 111 of the joint appendix. That was the position even the government took. So they took an inconsistent position as well. Does that answer the court's question? So you're, and then I'll let you go. I know you have maybe the only all former AUSA panel that the Fourth Circuit has. And so I don't want to take up their time because I'm sure they've got questions for you too. But your argument, when I'm looking at Zedner, your argument is the position you took below is not inconsistent with the position you're taking here because below when you asked for a continuance, you didn't explain that it was an automatic exclusion. And here you are explaining that it's not an automatic exclusion. That's right, Your Honor. And I would add that the papers didn't take a position one way or the other on whether it was an automatic exclusion, an other proceeding. An ends of justice is just very unclear on that point. But what is clear, I continue to contend, is that the only legal rationale that could have justified it was an ends of justice continuance. Except, last point, except that under binding Fourth Circuit law, even today, it is an automatic exclusion. You agree that the current law as you stand here in the Fourth Circuit is that it is an automatic exclusion. Yes, Your Honor. That's the Lieutenant case? Well, it's the Lieutenant and then there's the Keita case that reaffirmed that after. Who wrote that Lieutenant case? Honestly, it was from 2003. I can't recall. I think it might have been Your Honor, actually. I believe it was Your Honor. I think it was me. But you're saying that the Supreme Court overruled it? Not explicitly, but yes, I am. I thought that's what you were saying. I might have to agree with you. I don't know yet, but not explicitly I agree with that part. But they at least clarified some things. Here's my argument on that. I think a couple of the judges who were on it with me are on the wall now. At least one of them in here. I'm sure that's right. Maybe we didn't know as much about the Speedy Trial Act as we do now. Your Honor's panel wasn't the only panel in this country to arrive at that conclusion. That was what a lot of courts thought, was that plea negotiations could be excludable as other proceedings. Would a panel of this court decide the same way even after the Supreme Court decision? Would we need to overrule our precedent? No, Your Honor, because the Keita case, which I believe Your Honor is alluding to, had two alternate grounds that could justify the result. One was the Keita case. Yes, it did reaffirm Judge King's opinion in Lieutenant. But at the same time, the Keita case recognized that the lower court judge there had made the proper ends-of-justice findings. So I think the elegant solution that I hope this panel might arrive at is that the lieutenant holding from Keita was dicta, and that the controlling holding for our purposes was the recognition that the ends-of-justice findings were made there. That's the easiest solution here. The judge here could have done that, and that would have totally justified everything that happened. Otherwise, if this court were to hold the other way, there would be a circuit split with at least a couple other circuits about whether Bloat says what we contend it does. And I would add that the Department of Justice in the White case, Do you think those two circuits that you're referring to would upend if our conflict was left in? Yes, Your Honor. They are? I don't want to interrupt you if you haven't finished your answers, but I'd like to get back to the point that my friend Judge Richardson was alluding to a little bit. As I read your brief, you're claiming that your client didn't know anything about any of these motions for continuance, that he was in lockup for two and a half years before he was tried and didn't know about any of the speedy trial continuances. That's what the record seems to show, Your Honor. Well, how do you support that when, in each instance, his counsel of record moved for a continuance or joined in a motion or didn't oppose a motion for a continuance or to waive the speedy trial or whatever the right proposition was? The lawyer agreed in every instance. His counsel of record, and he had several of them. Yeah. There's nothing in the record to show whether that was done with or without Mr. Hart's consent. But under the law, he's represented by counsel. The counsel is him. Yes, Your Honor. And that binds him. How do you get around that point? Because our contention doesn't depend on that. You cite a couple of pages in the record here to support the proposition that he didn't approve of anything. Yes, Your Honor. And those are his letters to the district judge, I think. Yes, Your Honor. In each instance, he wrote to the district judge and said, I didn't know any of this. Yes. But he wrote to him or to the district judge after a couple of years. And then the judge entered an order explaining most of it. Most of them, but not the pre-indictment continuance. Not the pre-indictment. And part of what the district court said was that defense counsel has the power to seek a speedy trial act continuance without the consent of his client and cited a First Circuit case. Do you agree with that? I do, Your Honor. But that doesn't relieve the burden of making the necessary findings. That was the problem. Okay. So you agree. So he didn't. To Judge King's point, you do agree that the attorney could make the motion for continuance without the consent of the client. Yes, Your Honor. That's exactly why the Speedy Trial Act is so important. Because sometimes the attorney and the prosecutor and even the court I'm not sure I'd frame it that way. I thought the attorney for those purposes is the client. He speaks totally on behalf of the client. He's representing the client. He's counsel of record. He's an officer of the court. Yes, Your Honor. But that doesn't empower him to waive most of the Speedy Trial Act. And here we don't know. You don't have any affidavits from any lawyers saying I did all this without his permission. Correct, Your Honor. Or against his objections or anything like that to put at issue whether he agreed to all this stuff or not. Yes, Your Honor. You don't have anything to support that. You don't even have an affidavit from him to say what he said. He wrote a handwritten letter to the judge. That's correct, Your Honor. And I continue to insist that our claim doesn't turn on that fact. So we have to argue this thing on the basis that the lawyers spoke for him. Yes, Your Honor. Okay. So that part of the thing, are you abandoning that then? Your brief says he didn't consent to any of this stuff. That was frankly, to be perfectly honest, that was in response to the government's gamesmanship arguments, which are frankly as legally irrelevant as whether the defendant knew or not. But sometimes atmospherics are important. I hope it didn't distract from the critical legal issue. I took both of these points to go to the estoppel question, right? Well, I don't want to speak for the government, but they sort of allude at estoppel, but they don't really argue. It would be my contention from their briefs is they have a passing reference to estoppel. But that's not one of their headings. They don't flesh it out. There's no cases. Your Honor has argued it more strenuously than the government ever did. That happens sometimes. I see my time has expired. No, but you've been asked a lot of questions, and you've got some additional time on rebuttal as well. I do, Your Honor. And we appreciate your help. And I'll tell you more about that later. Thank you, Your Honor. Let's see what the government's going to try to explain about this. Mr. Medinger. May it please the Court, Your Honor. Jason Medinger for the United States. Your Honor, I'm happy to start with the Speedy Trial issue because that's the one that we've talked about the most here. We can get to his evidence issues. I'm not saying he's waived anything by that because we were doing all the work. Correct. We kept him on that one. Correct. I just want to respond to the Court's questions. So I think there's three ways that this Court can affirm without even getting into the bloat, Lieutenant Kida issues. And I think the first one is the one that Judge Richardson talked about. In page 13 of our brief, we cite the Zedner case for what I believe you're talking about it, that Zedner does recognize that you can have estoppel and waiver-like arguments here based on the conduct that we have. So you're arguing judicial estoppel? Yes, Your Honor. So that's one of our arguments. But you didn't argue it in your brief. I submit that we did. Again, we cited Zedner for the idea that you can consent, you can waive speedy trial irrespective of what the Speedy Trial Act says and irrespective of ends of justice findings, just as a matter of the parties. Really, Zedner had two red lines that you can't cross. The one is you can't do this prospective forever we are waiving speedy trial, and that's not a red line that's crossed here. How did this thing get so far out of hand? I mean, this fellow was in the pre-trial detainer, pre-trial custody, and it took two and a half years to get the case to trial. Right. So I'll tell you, Your Honor, how this evolved. And he had a slew of lawyers. He did, Your Honor. And all of them are speaking for him. But they either got withdrew or that's not explained very much in the record either. They changed lawyers. And it does look kind of funny from a factual standpoint. Well, Your Honor, so I think we have to look at the arc of this case. You know, it did arise sort of under an emergency. So we had issued a grand jury subpoena to one of the women that was in the orbit of this scheme. Mr. Hart found out about it and was going to do violence to her. Right, and that's part of the charge and everything. It is. Yeah, but it doesn't take two and a half years to make that charge. The speedy trial actually is 30 days. Right, so it doesn't for that, but obviously we were investigating the case and saw that this was a sex trafficking ring. And he had a bunch of other charges. Correct. And those all went in indictment. Correct. So that, you know, on the government side, that's part of why it took so long to get this case to trial. But the other part was the one that you mentioned, Mr. Hart serially going through lawyers. Well, but I don't know, did he fire them? They were public defenders. How do you fire a public defender? They're assigned. Well, there were some CJA lawyers. CJA lawyers? Right. The defendants don't get to pick their lawyers. So they do not, but when there are irreconcilable differences, the judges do let them out of their representation. But you all could have made a better record on every instance of these continuances on why they were being continued. I mean, the speedy trial act lays out all this stuff, and it would be easy to make a good record about it. So we wouldn't have to be arguing about this stuff right now. So I submit we have in the sense that if you look at the – Well, the first one is unexplained. And Judge Bassetti said, I've already ruled on it. You say, well, we can't consider his pro se motion. But that's wrong because the judge ruled on his pro se motion. He ruled on the pro se motion, and the judge said, I've already ruled on this. And he didn't rule on it as to the indictment delay. He had not ruled on it as to the indictment delay. That's still up in the air. And how do we get in this posture? So what I'll say, Your Honor, is I think the court specifically ruled on the pro se motion. He denied the pro se motion and explained, I've already ruled on it. He had ruled on seven of the motions to continue over that two-and-a-half-year period. And it ruled on the seven other than the one for the time for 30 days as to the indictment, the extension of that 30 days. When you put somebody in the jailhouse, you're supposed to charge them, not bind up the indictment or complaint, it says, within 30 days. And you extended that. You said by consent, but it was unexplained. And it's never been explained yet. Except in your brief and his brief and our review and the defendant's letters to the judge and all that. Well, Your Honor, so we do have the eight motions for exclusion. What's the basis for the first continuance? The first continuance was plea negotiations. Right. It was plea negotiations. And there's a specific reference in the act that you can have an extension for plea negotiations after there's a plea proposal. So that's correct, Your Honor. When you continued that first one on plea negotiations, you didn't say you had a plea proposal. That's correct. So that's different. It's different. And again, we have to remember, we were in the 2017 world, so we were under KEDA and Left Tenant. Oh, I agree. That's the expectations of what the parties thought at that time. And that's the basis for the exclusion. So that's JA-24. And on appeal, that is actually the only period that I believe they have changed. And that's what the – did Left Tenant directly deal with that part? Did we have plea negotiations? So Left Tenant – Other than a plea proposal? Was there a distinction made there? My understanding of Left Tenant is that it is the negotiation part antecedent to a written agreement, that that's the holding of that case. But, you know, there's a number of other ways that I think this case can and should be affirmed. And I think the biggest thing that I'll come back to is this was a mutual agreement by the parties to see if Mr. Hart could get a plea agreement that limited his liability. He didn't want to be charged with the entire sex trafficking ring. But that's not in the record, is it? Well, it's not. No, but so you're outside the record again. Well, I won't say outside the record. Here's what I'll say. You're not outside of it? We don't know anything about what your plea negotiations were. You don't know that. But what you do know, Your Honor – We know less about that than we know about Mr. Hart's position on whether he was consulted. We know he says, I was not consulted. But he only says that in a letter to the judge. That's right, Your Honor. And we don't know anything about your plea negotiations that you're talking about. That's outside the record. Well, I'll tell you the best I've got, and you can decide for yourselves. It's J.A. 21-22. And nothing was resolved here by way of plea. 21-22? He had a trial. I'm sorry. I was trying to hear his J.A. side. I'm sorry. So that you could hear it. J.A. 21-22, he's saying. Correct. All right. And that's the motion, and that's the best we've got. That's the motion, the first motion? Correct. Right. I'm correct. I understand that one. I've seen it. So, you know, Your Honor, just a couple things that I'll also say. We did say in the brief that, you know, the court didn't have to consider this pro se motion. And if you look at J.A. 136 and 137. He didn't have to consider it. I'll agree with you on that. Let's skip that argument. We'll go to the next one. Yeah. He didn't have to consider it, but he did. Don't waste your time. Fair enough, Your Honor. The third thing I'll say, my friend here says that, you know, ends of justice findings needed to be made and express ends of justice. That's the bottom line here. And the case that we cited for this court is United States v. Jarrell. And that's a case that says that even if you don't use the magic words, even if you don't say ends of justice, but there is a contemporaneous finding that would support an ends of justice finding, this court will affirm. And there it's almost exactly like this case, United States v. Jarrell. Is that published? It is, Your Honor. It's 147 F. 3rd 315. And there, that actually was the case you were talking about, Judge, about the plea negotiations. So it fell sort of directly within this sort of bloat problem. And this court avoided that and said, well, we looked at the exclusion that the court did make, and it essentially was the same thing that would have supported an ends of justice finding. It's contemporaneous, so it meets Zedner. Therefore, we are going to affirm. So I would command or recommend that decision to the court's attention. The other thing that I wanted just to mention very briefly before we maybe move on to other topics. That's your argument that rather than, even though the court did not specifically make the necessary ends of justice findings on the record here, if we look at the totality of the record, we can glean the ends of justice finding. Correct, Your Honor. And we can find that for you. This court can, yes. So I understand that. The argument you're making is when the judge said, for good cause shown, we can interpret that to say ends of justice. And that gives us the balancing. And then it's sort of step two, the reasons. We can then get the reasons from the motion, because they're not included in the order itself. We then would go to the motion and we'd say, we can tell what the reasons were for the good cause balancing from pages 21 and 22 of the JA. I'm not agreeing with it. That's the argument. Correct, Your Honor. That description of what we would need to do seems like quite the contortion  that this meets the ends of justice and why. Or that the lawyers, the prosecutor and the defense lawyer, writing it down and saying that's what we agreed to. Correct, Your Honor. If we could get it done like that, we wouldn't have to be making these findings for you on an appeal years later. Certainly, Your Honor. And I can say for the record as a matter of policy, we do these now as ends of justice findings only. We don't do it this way. Again, this was 2017. Things have evolved now with departmental policy. Speedy Trial Act has been around for 50 years. That's correct, Your Honor. You know when it was? I don't off the top of my head. I apologize. 74. I was within a year of it. Lastly, this court decided. One of the major Supreme Court cases on the speedy trial thing came from this court. They reversed the panel in this court in the McDonald case. Are you familiar with that one? Yes. You've heard of that? Yeah. We've helped make some of the law. This court decided two days ago just for the record in United States v. Payer. It talked about this issue about the client not having to consent that the attorney can do it. I'll just cite that because it just came out two days ago. Payer, P-A-I-R. What did it say? It seemed to, and again, I don't want to go too far with it, it seemed to endorse the idea that an attorney can agree to a speedy trial exclusion without necessarily having the consent of the client. That's what the district court said. I thought opposing counsel agreed that that could happen. He did. I just wanted to cite that. What was it, U.S. v. Payer, P-A-I-R? Is that published? It was. Were any of us on it? No, I think Judge Wilkinson was the author. Judge Wilkinson, okay. Thank you. Just issued a day or two ago. Okay. So, Your Honors, if there's no further questions on speedy trial, I'd like to just address briefly some of the evidentiary issues in case the court has any questions on them. Can I just ask one question? Yes, sir. So, if accept is a hypothetical that we reject all the arguments that you've just made and instead we get to the remedy question, I just want to make sure I understand. Your position is that the text of the statute requires the dismissal of the count, and so we would dismiss the count here, that single count, and then if we got then to the question of whether the dismissal or the inclusion of that count prejudiced the defendant during the trial, we would ask whether all of the threats and witness intimidation evidence was otherwise admissible as evidence of guilt of the underlying crime, and your argument would be it is here. Correct. Yes. So, under 3162, the remedy is defined as just kicking out the count, such charge. Which is count what? Count five. Count five would come out and you'd be entitled to a retrial on count five. The other convictions would be sustained. Correct. Again, assuming we get to Judge Richardson's point about the spillover effect, but again, I think we'd easily meet that standard, and the reason being is he was charged with conspiracy to do the sex trafficking by fraud, coercion, and force, and so the force that he was using against the witness that he was trying to intimidate was obviously equally applicable to the conspiracy charges. He was trying to – But also, because evidence of witness intimidation is always admissible to prove consciousness of guilt, right?  That effort to mess with the witness is evidence of the guilt of the underlying crime. 100%, Your Honor, so that's right. It also goes to the idea of the existence of a conspiracy, the idea that this defendant, Mr. Hart, knew he was in a conspiracy and was willing to use force to keep it together. There's actually a really interesting site, JA-417, where Ms. Ponser really puts that into effect. She testifies to when Mr. Hart was basically threatening her and saying, I will mess you up, I will hit you, don't end up like these other girls. Meaning, you've seen me hit these other women. If you go outside the box, I will hit you too. So I think that sort of shows that he's willing to keep this conspiracy together by force and violence and fear, so I think we would very easily meet that burden to satisfy that the rest of the claims are still fine. Moving to the evidentiary issues, again, very briefly, unless the Court has specific questions on specific ones. The first one is these physical attacks on Ms. Shipley, and the question is, were they proper or not? We argue that they were intrinsic. Of course, he was charged with these conspiracies that he was doing by force, threats of force, or coercion, so obviously the physical violence goes to that. There was a question, I think, about whether Ms. Shipley saw physical violence of others, and just a couple of JA sites that say that yes, she did. JA-292, Ms. Shipley says that she saw Mr. Hart hit Ms. Carey. Also JA-296, she saw physical violence against Crystal Smith. And then Ms. Ponser says that she heard physical abuse of others as well. So long story short, everyone within the conspiracy was aware of this physical violence as to others, so I think that finding has been shown. Very briefly, with regard to the prison guard issue, we do submit that that has to be reviewed under plain error. It just appeared twice in the record, JA-167 and 265. No objections were raised by the defense, and I'm not aware of any case saying that government witnesses have to be not in prison guard, so I think we don't get past the first plain error standard there. It doesn't make much sense that you let it happen. I'm talking about the prosecution, particularly here after Judge Bichetti chastised you the first day of the trial, and you brought her back the second day in prison guard again. He said, give her some civilian clothes. And your honor, I didn't try the case, so I can't speak to exactly why we didn't. I'm not saying you tried the case. You're the only one we got here. You're the representative of all these lawyers on the government side, and he's representing all the lawyers, a slew of them, on the defendants' side. Understood. And I mention it, your honor, because I asked the question, and we don't know. Can I ask the question? I mean, you know, we've all tried cases, right? But didn't the witness testify that he was in custody? I mean, when he's testifying, he says, I pled guilty, and so I'm in custody. Oh, yeah. So the fact that he's wearing an orange jumpsuit is just, like, repetitive of the testimony that he's already given. He says, I'm in custody. So it's almost odder to show up in a sweater vest, right? And you're like, have you ever worn a sweater vest before? No. Do you wear one now? Only because you put it on here to come put me in front of the jury. It seems like a dishonest move once he's testified that he's in custody. I think that's right, your honor. And to be clear, it's a female witness, so it was a she. I'm sorry. But you're right, your honor. Again, I think it's better to tell a jury the truth. And, yes, this person was in custody. They pled guilty, and that was out there in front of them, and the judge We don't do that for the defendant because that's prejudicial, right? Correct. And so we sort of engage in the, you know, we put them in a sweater vest so that we're not prejudicing them. But I'm not sure how that works with the witnesses. Right. And I think Estelle talks about this. I hear you. The judge told you not to do it, but you did it the second day. That's what I'm – mainly what I'm complaining about. I was surprised that the record revealed that. And ultimately, I think the judge did on J265 say, well, the jury does know, to Judge Richardson's point, the jury knows where she's at. They saw her yesterday. So it's not – it ain't a surprise. They had heard testimony that she's in prison. So I think he also made, you know, that finding. And then lastly, there's one sort of brief mention of Miss Shipley making an errant comment, and I don't think that meets the high burden for a mistrial. So based on that, Your Honors, unless there's any further questions, I would respectfully ask this Court to affirm. And some of these evidentiary issues are plain error review. Right. I think the prison guard one is. I think the other two are preserved. But, again, that goes to abusive discretion and subject to harmless error. That's right. Thank you, Your Honor. Mr. Barnum. Thank you, Your Honor. A few points. One, first responding to the government's contention that there is sufficient – sufficiency here in the record to find that the good cause findings were made. We dispute that. Two main reasons as to why. One is the good cause decision has to be made at the time of the decision to grant the continuance or the waiver. It can't be made later. You're saying we can't do it then? And neither could Judge Massetti. It can be memorialized later, but the record has to show that the judge considered the factors at the time. And here it's as clear as it could be because it was Magistrate Judge Connolly who did that, and then that was his last appearance in the case. All we have is – That doesn't answer his argument. We don't generally require magic words. That's not the business we're in. On JA-25, I think, when the judge said, for good cause shown, that that was evidence contemporaneous of a decision made by the judge. The question is whether that decision suffices or not. But there's not a timeliness problem, right? That's the decision. Well, I was a little unclear as to whether the government was limiting its argument to the four corners of the filings for the continuance or the whole record, so I think Your Honor is on the same page. And so responsive to that question – Except hypothetically that I'm asking that question. That's – if good cause shown – I think we would say if the court had said the ends of justice show, we wouldn't have trouble here, right? We would recognize that that was the balancing that was required. The question is why for good cause shown is different than saying the ends of justice. Yeah, it's not nearly close enough. Ends of justice might be arguable. Good cause is – that's a standard that appears in however many different places in the law. It gives no indication that the Speedy Trial Act's specific criteria, not just the ends of justice – I don't think good cause shown was a pretty good statement. It's time-honored. That's in a lot of orders and things. It is, Your Honor, and that's exactly the point of the Speedy Trial Act, right? The Speedy Trial Act has specific things – Maybe not. They only apply to speedy trial. But there have been a lot of court orders that just said that. For good cause shown. I wasn't able to find one sustaining that in the face of a requirement  And it's better to do it your way now. I agree, Your Honor. Which is why the government is doing it that way now. I think everybody agrees with that. The Solicitor General's office conceded that that was necessary in another case. I don't think anyone's arguing about that. And so my contention is just very simply that the orders here doesn't have enough – I'm sorry, say that one more time. The Solicitor General conceded what? Conceded that the blowout – I don't know how you say it, bloat or blowout – applies and that now these pre-indictment plea negotiation continuances have to have the good cause language, ends of justice. And this good cause, unless there's a case that says good cause – Is that in the U.S. Attorney manual or the Department of Justice policy manual now that fixed it? I can't answer that, Your Honor. I don't know. Improved it? Whatever. Your colleague said it's the policy of the department to do it that way now. Where that policy is, we don't know. But he represented that that was the policy now. Yes, Your Honor. With my last minute, I did take another look at the relevant language from Zegner about Westapol, and it does speak in terms of persuading the court to accept a position. So I would submit that that type of language connotes more than just simply sliding through a boilerplate motion that has no citations to authority, no argument. But the persuasion is the parties submit it is in their mutual interest to delay the filing of the indictment to discuss the possibility of a resolution of the matter in advance of further proceedings. And that doesn't speak at all to the applicability or inapplicability of the Speedy Trial Act. But it goes to the – yeah, because the Speedy Trial Act is the two paragraphs above, right? This is the factual piece, which is paragraph three. This is saying why we want you to do this, right? It's in our mutual interest to try to resolve this before – and we know what – I mean, it just says further proceedings, but we know what that is as an indictment, right? Because that's the first part of the sentence, right? It says filing of an indictment. We know that's the next proceeding. And so that's the concern I've got. I mean, that's just my angst, right, is that you're saying, you know, I need this. The government wants this. Let us try to resolve this. And now you're saying we can't do that. I agree, Your Honor, but I agree with the characterizations. But Zegner speaks in terms of a legal position. Everything Your Honor has described is more of a factual position. This is why we need this. There's no legal position taken by Mr. Hart through his counsel. And I would also, with my – well, I guess I've got negative now – add that the government hasn't sufficiently placed the estoppel issue even before the court. I would submit it's not before Your Honors today, regardless of what the appellant's position is on it. Thank you. And you didn't say – argue much about, if anything, about the evidence issues. I'd be happy to address it if – You don't have to address them. No, but you've addressed them in your brief. That's right. And I should say I'm not – You're not waiving it yet. I think in five seconds that the three evidentiary issues sort of conspire and combine. If they're looked at together, that's why we think it's a serious issue. The divide-and-conquer strategy of the government, we think, is the wrong approach, as we explained in the briefs. Thank you, Your Honor. And Mr. Burnham, I know that you are court-appointed. Yes, Your Honor. You only got in this after the appeal was filed, I think. No, I was trial counsel. I got in – Oh, you were the trial counsel. I was the last – But you're court-appointed. And I'm – it's hard for me to keep all these cases straight. But you were the trial counsel, and you've been the appellate counsel, and we appreciate you. My pleasure, Your Honor. And thank you for your work. Thank you, Your Honor. We'll come down and greet counsel and adjourn court for the day.
judges: Robert B. King, Stephanie D. Thacker, Julius N. Richardson